The first case call for oral argument is Alvis v. City of Duquoin. Counsel, whenever you're ready, please proceed. I apologize, Your Honors. Good morning. Good morning. I represent the appellate, Paul Storm, and I represent the appellate, Jerry Alvis. And it's a pleasure to argue this case before you gentlemen, and particularly Judge Welch, who decided several cases before this on similar issues, Long and Parsons v. Farberdale. And so I'm glad he's on the panel today not to exude or attempt to exude favoritism. But let me tell you factually what this case is about. The plaintiff, Jerry Alvis, a young man who is a painter, professional painter, worked for Graham Painting Company, a subcontractor of City of Duquoin. Now, the City of Duquoin and Graham Painting Company had a long-time relationship in that the Graham Painting would paint the crosswalks for the City of Duquoin and spruce up the city before the Hamiltonian. Jerry Alvis, the plaintiff, as working for the Graham Painting, was painting crosswalks. And on August 18, 2006, he was painting a crosswalk at the intersection of Main Street and the City of Duquoin when he was struck by a motorist, Gary W. McMurray, who was operating a Mercury vehicle in a westward direction on Main Street. Now, I don't know if you're familiar with the City of Duquoin. I'm not that familiar, but I've been down there. This roadway, Main Street, runs through the middle of the city. On each side of the Main Street are little shops and there is diagonal parking. But the important thing to remember in this case that Main Street running east and west is a two-lane roadway. It crosses Oak Street. Then the next street up is Chestnut Street, which are north and south streets, both of which have crosswalks. And then there's the railroad tracks and then out of town. Now, the City of Duquoin, in speaking with... We're not going to know what the City of Duquoin and Mr. Graham spoke of. What they spoke of, whether there's any safety features or anything included, because it's an oral contract and it's not something that this court or either appellate or appellee can look at. So we just assume that there was a phone call and a bid was made by Graham and he said, we'll go out and paint the crosswalks. Now, there's one thing that is important, though. We do agree with the appellee that the paint and all the equipment was furnished by Graham, with the exception of perhaps the orange cones, which were obtained from the City of Duquoin. Now, another important factor here is the fact that there was a police officer, James Booker. He was the chief of police of the City of Duquoin. And he just happened to be the street that was west of Oak. And I put in my brief facing south, but he was on the south side and his patrol car stopped there looking north. And Gary McMurray, of course, when Judge Brown decided this case on summary judgment, he did not enter any orders concerning the issue of proximate cause or foreseeability. So I did not address that in my original brief, but I see that counsel for Duquoin addressed it somewhat, so I will argue that as a rebuttal in my rebuttal brief in which I argued the McDonald's case and other cases. Now, on the day of this accident, there were two very important factors which the plaintiff believes will carry the day for the plaintiff, for the appellant. One is the Road Worker Safety Act. Now, this act in its reading states, at all times during which men are working where two-lane traffic is utilized, which is the case here, this is a two-lane roadway right through the middle of the City of Duquoin, the contractor, which we consider to be the City of Duquoin, or his authorized agent, which is Graham Painting, in charge of such construction will be required, will, now that's a very important word in our ministerial discretionary thinking process as set forth in the Long case and Parsons and other cases by this court, will means mandatory, will, will be required to furnish no fewer than two flagments on each end of the portion of the highway or bridge in which the one-way traffic is permitted. Now, the second big point that the appellant wants to emphasize with this court, that along with 745 ILCS 10-3-102A, a local public entity has a duty to exercise ordinary care to maintain its property in reasonably safe condition for the use and exercise of ordinary care of people whom the entity intended, intended, or permitted to use the property in a manner which at all times as it is reasonably foreseen that it could be used. Now, no question that the city of Des Moines intended Jerry Alvis to paint these crosswalks. It's also no question he was permitted to paint these crosswalks. And as we talk about all these areas in the city, streets, sidewalks, cases where people, there's been disputes where the bicycles have been put on sidewalks where there's ordinance to say no bicycles. There's this case, this recent case of an area outside of an apartment which the city was maintaining where a person slipped and fell in a hole. All of these cases, and this is going to be, these cases are case-by-case cases, and I realize that because you read through them, and the more you read about ministerial discretionary, the more you read these cases, the more in a buzz you become sometimes. At any rate, essentially the question is this, and not the question, the statement is this, the city had a duty. The city was required to follow the Road Safety Act. Now, in some of the depositions, the Spencer, some of the depositions, you'll find that the city had IDOT people there, available. IDOT people were available. They had gone through the training process, and they testified that they always do this or use these flagments on state roads. In other words, when they get out of their city, and they're doing road work out of the city, which they have to do, they use the flagment. They also will tell you that they had engineers and supervisors, safety engineers, we depose them, safety engineers for the city. The city also had notice of this situation, because in years past, the same situation happened. This is a get-cheap situation for the city of Des Moines. Let's do this cheap. Let's give it to somebody and pay it so we don't have to spend any money on it. Get-cheap situation. Does it make any difference if this is an independent contractor in your position? Well, it doesn't make any difference because the city... The duties wouldn't apply no matter if it's a record... It's non-duty. Yeah. This duty that the city has to keep their streets safe is non-delegable. That's one of the arguments which we have gone on to argue in our brief. And non-delegable means that when a city undertakes to do road construction work, they have a duty, even though they hire people, they have a duty to maintain the roads in safe condition. Now, a line of cases on this that some of them are very old, but they've never been overruled. Now, let me tell you, on page 17 of my brief, the defendant argues that they are immune from liability or have no duty because they are not the contractor who hired Graham Painting Company, I hope this answers your question, Your Honor, as a subcontractor and its employees appointed, therefore, to have no duty. The city of Des Moines is not excused from the duty to refrain from negligence or willful misconduct by subcontracting the painting of the crosswalk by Graham Painting. Now, there's a line of cases, Coles v. City of Winchester, Chapman and Lowell. And Cole, which was the first case, v. City of East St. Louis, which is a very old case, in the Village of Jefferson, which is 1889, and Lowell v. City of Chicago, 1910. These cases have been shepherdized. We shepherdize these cases and they're still law. A city, by making a contract for improving streets, which we have here, Your Honors, which we have, painting the crosswalk, which is still a law, makes a city making contracts for improving streets, cannot divest itself of a duty to supervise improvements or exonerate itself from liability for injury resulting from contractors' negligence. Now, so there is a duty. The city has a duty. This duty is non-delegable. We have a person who's legitimately in the place the city wants him to be in to paint these walkways, in the crosswalks. He's not in some area or park or between the sidewalks or something like that or outside of the walkways. I mean, he's in those areas. There's also the statute. Now, for the life of me, when I read the brief of the appellee, he skirts, he does not deal with the statute at all. He does not deal with the statute. The statute says, in all cases, at all times, where one lane of traffic is cordoned off, they shall provide flagging. It doesn't say just in the state of Illinois. It just doesn't say in cities of population of one and a half million. It said all times and all places where this work is being done. Now, I also want to argue, I want to take the position of the police officer here. Now, I think this is a little tougher case against the police officer than it is the city because of low immunities for law enforcement officers, which I have to concede to. But in this situation, this situation with Officer Booker is not as serious as some lady yelling outside her apartment house and saying, hey, there's somebody in my apartment raping my kids or doing this or doing that. Will you, officer, please break the door down and go ahead and save my kids? I agree it's not as serious. But it is serious in the fact that here this officer, a trained police officer, captain of the force, is there watching all this go on. He sees. He sees the cars going and coming. He sees these fellows, Mike Fortner, the painter, and Jerry Ellis, the painter. He sees them painting these crosswalks and does nothing. Now, the reason he does nothing is it's not that he couldn't do anything because in his deposition he could have stopped this. He could have stopped it. He could have given a citation. He did not know the Road Workers' Safety Act. He didn't know that. He didn't know that there was a violation going on right in front of him. Ignorance of the law is no excuse. Now, if you have a little trouble with this police officer situation, you know there's an exception, a special duty exception. There's a special duty, Burdine versus the village of Glendale Heights, and there are four factors involved here, and it just fits like you wear a nice shoe and you pick up a nice shoe and it fits perfect. The officer worker was uniquely aware of the particular danger and risk. Now, if he'd known the law, he would have. Two, that the plaintiff had alleged specific acts or omissions on the part of the defendant with respect to the danger, which is the truth here, which is the case here, and the specific acts or omissions were affirmative, and the injury occurred while the plaintiff was under the direct and immediate observation of this officer. All of them fit. All of them fit. Size 9. Foot size 9. Now, the last thing I want to argue, and my time's running out, is Judge Brown, God bless him, he's missed on this whole thing. He lumped together. Now, we all know that there is no car immunity for willful want acts. We all know that. But Judge Brown, God bless him, he lumped all this stuff together. When I say stuff, I mean all these allegations together. He lumped them all together. He didn't make any difference between my allegations of willful want misconduct as Murray and Reese and those lines of cases distinguish. He didn't make any difference. He just said there's no question of facts here. There's tort immunity. Bingo. Now, we must understand, and you know better than I do, that statutes in derogation of the common law must be strictly constricted. We know that there's exceptions to the tort immunity situation. We know that any ministerial acts are, as Judge Welch said, impartial as well as law, that if you have a manual, if you have a manual that tells you where to put road signs, if you have a manual that tells you where to put curve signs and you don't do it, you're a liar. Now, if I've misquoted you in these cases, I'm sorry, but that's the way I've read them and I have them right in front of me. And that's a mandate, a mandate that you do this, you do that. Now, that's ministerial, ministerial, ministerial. And there is no tort immunity for ministerial acts. All right, my time's, how much time I have? Two minutes. Okay. I will deal with the problem of proximate cause if proximate cause is raised. I thank you all very much. Thank you, counsel. Counsel? Good morning. Good morning. May it please the Court, counsel, my name is Keith Hill and I represent the defendants, Cedar Point, and Laura Booker, the administrator of the State of James Brooker. The circuit court's order granting summary judgment in favor of defendants should be affirmed because defendants did not owe the plaintiff a duty. Defendants are also immune from liability under Sections 2-103, 2-104, 2-201, 2-205, 2-206, and 3-104 of the Tort Immunity Act. Finally, defendants' purported conduct was not the proximate cause of the plaintiff's injury. I'll address the duty first. In Counts 1 and 3, the plaintiff alleged that the city failed to provide a flagman, failed to oversee the painting of the fire that Grahams provided the flagman, failed to shut down his job, failed to give a warning or citation to Grahams, and failed to provide a safe workplace. In this case, the city was the landowner. The city contracted with Grahams, the contractor, to do work on its land. The general rule is that a landowner is not responsible for injuries caused by the contractor. There are exceptions to this rule, and I'll address those exceptions. First, there is the retained control exception to this general rule. In this case, the city did not retain control of the work. The undisputed facts are that there was no written contract between Grahams and the city. Dale Spencer, the city public works director, testified that he never told Grahams how the job was to be performed. Grahams knew how to do what they'd done in the past. He also did not discuss safety with Grahams, including the use of a flagman. No city employee was furnished for the job, and Grahams supplied the paint and the men. No one from the city oversaw the work that Grahams was hired to perform. The plaintiff admitted that Grahams was responsible for furnishing his equipment and his supplies and supervising his work. The plaintiff also admitted that if he had a problem at the work site, he would go to Grahams, or Mr. Grahams, Eric Grahams, the owner of Grahams. So clearly in this case, the city did not retain the necessary control over the work to hold them liable for the independent contractor's negligence in this case. Well, how do you differentiate maintain control over work versus maintain control over streets? Well, I'll just say that that's the next exception, Your Honor. It's a non-delegable duty. In this case, there is a non—well, I won't call it a non-delegable duty. There is section 416 of the restatement that says that if you have a—  Section 418 of the restatement says that if you have a duty to maintain a highway and you entrust that work, the maintenance and repair of that work, to a contractor, you are then responsible for injuries to persons traveling upon the road while it is held open to the public. Now, there's case law out there that says that this only applies to third persons traveling on the road. It's the public. It does not apply to employees of independent contractors. It's never applied to employees of independent contractors. If you look at each of the cases cited by Plaintiff, the cases that date back some time, I think it's Lau and a couple others, all those cases involve persons, pedestrians, walking across a sidewalk, they come upon some work and injure themselves. None of those cases involve an employee of an independent contractor. And if you read the illustrations to the restatement, section 418, you'll see that none of the illustrations involve employees of an independent contractor. They all involve what I'll call pedestrians or third persons. So there's no Illinois case holding that this section, section 418, applies to employees of an independent contractor. In fact, there's this Apostle v. Lopez case, 287 Illinois Act, 675, which stated that there is no Illinois case that has imposed a non-indelible duty of care on a principal for injuries to the contractor's employees. I think that case is directed on point and supports what I've been saying, that these sections, section 416 and section 418 of the restatement, do not apply to employees of independent contractors. What was that case again? It was Apostle v. Lopez, 287 Illinois Act, 675. We spoke about 418. I mentioned 416. I just want to touch on that briefly. 416 relates to contracts which require work that has a particular risk of harm. And again, it says others. It refers to others. Well, others is not employees of independent contractors. Others is pedestrians, persons walking along the way. And again, if you look at the illustrations, these are the section 416, you'll see that all the illustrations involve others and not employees of independent contractors. So in addition to the allegations I discussed earlier, the plan also alleges that the city negligently and willfully, wantonly contracted with Grams when it knew or should have known that Grams would not provide a flag. When I read this, it sounded like a negligent hire theory. And section 411 of the restatement deals with negligent hiring. And if you look at section 411, it refers to third persons. It's my argument that third persons, again like others, would not include employees of independent contractors. And again, if you look at each of the comments of the illustrations, you'll see that that's supported for that. There's no mention of employees of independent contractors there. And if you go to the Recchio v. GR MH 4366 Illinois Act 3448, the court stated that it appeared that an employee of a negligently retained entity is not within the class of third persons to whom a duty of care in hiring an independent contractor extends. So not only do you have the Apostle case, but you also have this Recchio case, which are all consistent. 416, 411, and 418 do not apply to employees of independent contractors. These all apply to others. So these do not fit the facts of this case. Mr. Atlas was an employee of an independent contractor retaining entity. Is there an issue whether or not Grams is an independent contractor? There's no issue. He's a contractor, an independent contractor hired by the state to do work on their land. This is also consistent with the overwhelming majority of cases from other jurisdictions. I don't need to go through them here. They're all cited in my brief. Again, the overwhelming majority of cases have found, consistent with my argument, that these restated sections apply to third persons, not employees of independent contractors. Furthermore, all of the plaintiff's allegations come down to the same thing, that the city did not enforce the Roadworkers' Safety Act. But the problem is that the Act does not apply to the city. The Act says it applies to contractors, subcontractors, or his or her authorized agents. In this case, the city was not the contractor. We all know what contractor means. The contractor is the person you hire. The city hired Grams. Grams is the contractor. The city had nothing to do with this work. It was neither a contractor or a subcontractor or an authorization. Grams is the contractor. There was no subcontractor. If you look at the Richard v. Illinois Bell Telephone Company case, it clearly defines what contractor means, and the city just does not fit within that definition. Also, there's Section 8 of that Act, which says that the city is exempt. The statute specifically exempts municipalities from its coverage. So the city not only does not fit factually within the definition of a contractor in this case, Section 8 exempts the city outright from its provisions. And if you look at the Bus v. City of Peoria case, I don't have a slide for it. I'm sorry. It's in my brief. But look at the Bus v. City of Peoria case. Factually, now this is a situation trying to impose liability on a city for failing to provide a flag, and the court either granted a motion to dismiss or granted a summary judgment, I don't recall which, with regard to saying that Section 8 exempted the city from its provisions. It did not apply there. So Bus is not going there. Finally, the city did not have a duty, regardless to enforce the Worker's Safety Act, under the public duty rule. The city does not have a duty, municipalities do not have a duty to enforce the law as to any individual person because that applies to everybody. There are, of course, exceptions to this, which is a special duty exception. And I want to make clear that the special duty exception, the last element on the court, is not whether someone's within the observation of a police officer, it's whether someone's within the specific control of the police officer. In this case, Mr. Alice was not in the specific control of the police officer. The police officer was just down around the corner looking at him. He was not in his control at all. I think there's an analogy that the cases have said that if somebody's in the snake pit, the city has no duty to get him out of there, but if the city put you in the snake pit, then you have a duty. Well, the city did not put Mr. Alice in the snake pit. His contractor, Graham, is the one who's responsible for putting him there, and the city had no duty to go do anything about that. That's under the public duty rule. Now, turning to the tort immunity provisions here, Section 2-103 and 2-205 grant immunity for injury caused by failure to enforce the law, and I think that's exactly what we have here. They're complaining that we failed to enforce the Roadworker Safety Act, either by shutting down the job or not giving this contract to Graham or siding him or doing something, but we have immunity for our failure to do so under 2-103 and 2-205. I think also 2-104 and 2-206 would also apply here with regard to issuance or failure to revoke a permit, approval, or other authorization. All the plaintiff's allegations come down to our failure to enforce that law. Under those provisions of the Tort Immunity Act, we clearly have immunity for our failure to do so, aside from not having a duty in the first place. The city also has immunity under Section 3-104 for its failure to provide a flag. 3-104 provides immunity for failure to initially provide a traffic control device. If you look at the Jefferson vs. City of Chicago case, 269 Illinois Ave. 3rd, 672, that case is on point. There it fell that the plaintiff's allegation that the city failed to provide a flagman at the scene ran afoul of Section 3-104. A flagman is a traffic control device. Section 3-104 applies right there. Plaintiff's counsel commissioned the Parsons case, which happened in Carbondale. In that case, what the city did was they actually put up a stop sign, but I think they put it on the wrong side of the road or they did something wrong with regard to that, and that was violative of the Illinois Traffic Control Manual. So if you actually provide a traffic control device, and you do so improperly in violation of the Traffic Control Manual, that's now a ministerial act. You don't have immunity. But if you fail to initially provide one, that's where Section 3-104 kicks in and gives you immunity. So in this case, the city's failure to provide a flagman at all is covered under 3-104. The final point on immunities, or one of the final points on immunities, is that these immunities that I've relied upon in my brief are all absolute immunities. The cases are clear here that these provide immunity for not only negligence conduct, but also wolf-1-1 negligence conduct as well. The cases are really specific to their own point, and each of them say that the immunities that we assert are absolute. The final immunity that we rely upon is 2-201, which is the discretionary policy decision immunity. Again, one of the arguments is that the city negligently hired grams. I would argue that the hiring of grams was a discretionary policy decision. The city had a factor in various matters in the decision to hire grams or not hire grams, and in doing so, they made a discretionary policy decision as to that, and they have immunity for that particular decision. Finally, with regard to proximate cause, defendants' actions in this case were at best a condition by which the injury was made possible. Any causal connection was broken by Mr. McMurray's reported or Mr. McMurray's wrongful conduct. You have to keep in mind here that there was a cone set up. This is a flat stretch of road. There's no obstructions to Mr. McMurray's vision at all. There was a cone set up. Mr. Alice and his partner were wearing white painter's clothes. They had a piece of equipment out there, and McMurray just ran through those cones and unfortunately struck Mr. Alice. I think that Mr. McMurray's negligent conduct is the intervening cause, which is the actual proximate cause, the legal cause of Mr. Alice's injuries. The city merely created the condition at best by which Mr. McMurray's negligent conduct intervened and approximately caused his injuries. For the foregoing reasons, defendants respectfully request that this court affirm the circuit court's order granting summary judgment in their favor. Thank you. Thank you, counsel. Your Honor, the city of Des Moines wants the chocolate Hershey pie with the chocolate bars out. They want to eat the chocolate bars but leave the rest of the pie. This is not a per se landowner's case. This is not a landowner's case. This case of Apostle v. Lopez was a general contractor hired a subcontractor to demolish a building. And in the demolishing of the building, a piece of pipe or something flew out and killed somebody. Now, this is in the line of the 41644 situations in which you hire a guy to come out and paint your house. You say, here you go, you paint my house, that's it. You don't tell him where to paint, what to paint. You don't give him a ladder. You don't tell him, hey, get a little more over here like that. There's no question about that situation. This is a street case. This is a case involving the duty of a village to maintain and keep their streets in safe control, to cut the brush in law, to put the right signs up as required by the manual. That's what this case is about. It's not just an owner and occupier of land. It's a city who has a duty to keep their streets in safe condition. Now, when they did not comply with the manual or the Road Workers Act 430 statute, they did not have their crosswalks, the walks that used by people either for painting intended by the city or what, they did not have it in safe condition. Now, he speaks of proximate cause. Mr. McMurray in his deposition said, I did not see the cones. Had there been lights, warnings, flagmen there, I would not have hit that man. That's what he said. The police officer said, had I known, had there been flagmen there, the chances are this accident would not have happened. And then the last thing I want to talk to you about is some of your recent cases. Marshall versus personal representative administrator stayed at Burger King. This person sitting in Burger King, bingo, car goes through the window and kills the guy. They argue, the defendant argues proximate cause. And they say, the duty is not sink or sink. It is an expression of the total consideration of policy, which the law says. They should have known that, you know, they should have known. We're talking about personal representatives and we're talking about Simpkins, a case that you decided this summer, June 10th, 2010, the opinion in Simpkins. A person owes every other person a duty to use ordinary care to prevent injury. In this Simpkins case, there's foreseeability, likelihood of injury, and the magnitude of burden involved in guarding against harm. You found that an employer had these responsibilities. And follow the Marshall case. So I did not originally argue proximate cause, but of course, the Burger King case is way out there. And you know that it's way out there on proximate cause. And I don't think there's any issue of proximate cause when you read the factual situation here. And I respectfully state that when you decide this case, don't decide it as Joe Globe, property owner, letting a painter come out and paint his building. This is a city. This is a city with responsibilities, who did not follow mandates of Illinois law, who placed this man in this perilous condition when he was knocked 20 feet and suffered severe brain injuries. Thank you so very much for letting me argue this case. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. The court will be in a short visit.